EUGENE F. GROSSMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Grossman v. Commissioner
Docket No. 5565-70
United States Tax Court
T.C. Memo 1974-269; 1974 Tax Ct. Memo LEXIS 50; 33 T.C.M. (CCH) 1213; T.C.M. (RIA) 740269; October 15, 1974, Filed. Richard B. Dodge, for the petitioner. Lloyd H. Nearing, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1967 in the amount of $6,306.37. Some of the issues have been disposed of by the parties, leaving for decision whether petitioner, a stockholder, officer, and member of the board of directors of Argentum Consolidated Mines, Inc. (hereinafter Argentum), properly deducted on his personal income tax return for the calendar year 1967 expenses paid in behalf of Argentum. FINDINGS OF FACT Petitioner filed his 1967 individual *51 income tax return on the cash basis of accounting with the district director of internal revenue at Los Angeles, California. His legal residence at the time of filing his petition was Santa Monica, California. During 1967, petitioner owned 50,000 shares of the common capital stock of Argentum, a publicly traded corporation with 1,500,000 shares of common capital stock issued and outstanding. Petitioner is the second largest shareholder of Argentum and owns 3-1/3 percent of the common stock. The largest shareholder owns 6-2/3 percent of the stock. Petitioner acquired the Argentum stock in 1953 and 1954 for $10,000. From 1954 through 1967 petitioner was vice president and a member of the board of directors of Argentum. The corporate headquarters of Argentum in 1967 was located in the home of its president, but petitioner performed his work in connection with Argentum from his own home. Petitioner spent a great deal of time attempting to interest large mining companies in the mining claims and properties of Argentum so that they might finance production of the ore. He also did assessment work necessary on mining claims, prepared reports, and answered corporate correspondence. *52 The major assets of Argentum are patented and unpatented mining claims, some stockpiles of silver ore, and some tailings (residue after processing the ore). Argentum did not own real estate, machinery or equipment nor did it have a corporate bank account in 1967. From 1953 through 1967 Argentum had no income, paid no dividends on its stock, and paid no salary to any of its officers or employees. However, Argentum has received income from advance royalties since approximately 1970. From 1953 through 1967 petitioner has from time to time voluntarily and without legal obligation to do so, paid certain expenses of Argentum in order to preserve and protect the corporation's silver interests. It was necessary for Argentum to do assessment work on its ore deposits yearly to protect its unpatented claims. Also, taxes on its property were due each year and each year it incurred such operating expenses as rents and office expenses. These expenses, among others, have been paid by petitioner. Petitioner expected reimbursement for the expenses he paid for Argentum if the company became successful. Petitioner received a letter from Argentum, signed by its president and dated October 21, 1964, which *53 stated in part as follows: Members of the Board of Directors, Stockholders, Creditors and officers of Argentum Consolidated Mines, Inc., and I, personally, want to thank you for your efforts and unselfish donation of time and money to enable our Company to remain solvent. * * * Argentum Consolidated Mines, Inc., Board of Directors, and I, personally, feel very bad that we have been unable to reimburse you, as there is at present no available treasury funds, but our hope is that in the near future, thru either your efforts or others' we will be able to interest large venture capital in reactivating these great silver producing properties, and at the same time aid an area already labeled with economic distress by the Federal Government and the State of Nevada. Should our Company manage to survive, you can be assured that some legal means will be used to compensate you for your donation of personal and financial aid. At a meeting of the board of directors of Argentum on February 14, 1970, the following resolution was adopted: RESOLVED: That EUGENE F. GROSSMAN MILTON WICHNER and C. H. HALLIGAN be issued promissory notes payable in monthly installments equal to 1% or more of *54 the balance due to each of them by the corporation together with interest from January 1, 1970 at the rate of 5% per annum on the unpaid principal balance. RESOLVED FURTHER that the amount payable to EUGENE F. GROSSMAN as of January 1, 1970 is the sum of $35,367.37 and that the amount payable to MILTON WICHNER as of October 27, 1969 is the sum of $8,147.27. RESOLVED FURTHER that a note be issued to C. H. HALLIGAN for the amount due to him upon verification of the amount by the Board of Directors upon the same terms as provided for Messrs. WICHNER and GROSSMAN. Argentum issued to petitioner an unsecured promissory note in the amount of $35,367.37 dated January 1, 1970. This note was intended to be for repayment to petitioner for his out-of-pocket expenditures on behalf of the corporation. For the taxable year 1967 petitioner paid the following current operating expenses on behalf of Argentum: Rent
$ 540.00
Salaries
5,400.00
Insurance
61.60
Payroll taxes
558.90
Attorney fees
317.50
Secretarial travel
299.50
Automobile
1,246.00
Janitorial
77.50
Telephone
764.20
Dues, subscriptions
220.47
Entertainment
1,077.48
Maps/Blueprints/Photostats
405.07
Postage
140.26
Travel
367.79
Bank service charges
24.54
Office
671.58
Total
12,172.39
*55 Petitioner, as a part of his 1967 income tax return filed a Schedule C "Profit (or Loss) for Business or Profession" in which he listed his principal business activity as "Mining exploration." On this Schedule C he showed no income and the above listed expenses resulting in a loss of $12,172.39. Petitioner deducted this loss from the other income reported on his 1967 return. Respondent in his notice of deficiency disallowed petitioner's claimed deduction of the $12,172.39 loss with the following explanation: Net loss of $12,172.39 from mining exploration is not allowed because it has not been established that this amount constitutes ordinary and necessary business expense or was expended for the purpose designated. Therefore, taxable income is increased $12,172.39. OPINION Although petitioner on his return deducted the amount of expenses of Argentum which he paid in 1967 as expenses of a business, his primary contention on brief is that these payments are deductible by him under section 212 [1] as "ordinary and necessary expenses paid * * * for the production or collection of income" or "for the management, conservation, or maintenance of property held for the production *56 of income." Apparently, however, petitioner has not abandoned any contention that his payments of Argentum's expenses are deductible by him under section 162 as "ordinary and necessary" expenses paid by him in carrying on his trade or business of being an officer of Argentum. Deputy v. Dupont, 308 U.S. 488 (1940), enunciated the general principle that expenses of a corporation paid by a shareholder are not ordinary and necessary expenses of the shareholder, but rather ordinary and necessary expenses of the corporation. The decision in Dupont requires that the expenditures proximately result from the trade or business of the taxpayer in order to be deductible by him. [2] The expenditures petitioner made on behalf of the corporation did not result from any business activity of his own but instead directly resulted from the business operation of Argentum itself. The parties agree that the expenses were normally incurred by the type of mining business in which Argentum was engaged. However, this fact merely further shows that the expenses arose from the corporation's business, *57 not from the petitioner's. Although petitioner spent time on the affairs of the corporation and paid the corporation's expenses from his own funds, the expenses he paid were those of the corporation. [3]
*58 Under the provisions of section 212 as under those of section 162, an expense to be deductible must be "ordinary and necessary" and "personal to the taxpayer" as well as "immediately related to his own income or property." Harry Kahn, 26, T.C. 273, 275 (1956). Bert B. Rand, 35 T.C. 956, 961 (1961). Petitioner's argument that the deduction is allowable as an expense paid for the production of his future income in the form of a salary from Argentum or dividends from his stock in Argentum overlooks these criteria for deductibility under section 212. The expenditures petitioner made to maintain Argentum's corporate headquarters and mining properties by their very nature are operating expenses of the corporation directly related to the production of Argentum's income, not petitioner's. See Bert B. Rand, supra; Walton O. Hewett, 47 T.C. 483 (1967). Petitioner was not required as part of his duties as a corporate officer to pay the expenses, and there is no evidence that the expenses in any way enhanced petitioner's income. Even though the expenditure of a stockholder might cause a corporation to prosper, a deduction is not allowable to the stockholder *59 since it would be the income and property of the corporation which would be immediately benefited. Harry Kahn, supra. Petitioner contends that the expenditures he made were necessary to conserve his stock interest in Argentum which he held for the production of income. There is evidence that the expenses for taxes and assessment work were important in maintaining Argentum's ownership of mining claims and properties. However, the expenditures were directly related to the conservation of Argentum's property rather than petitioner's. Although there is perhaps an economic link between the conservation and maintenance of the corporation's property and the future worth of petitioner's stock, the benefits petitioner stood to receive from the expenditures were too remote to cause the expenses to have the proximate result of conserving and enhancing petitioner's estate.See Deputy v. Dupont, 308 U.S. 488 (1940). Furthermore, petitioner's expenditures on behalf of Argentum were not "ordinary" expenses incurred by a stockholder for the conservation of property held for the production of income. The fact that petitioner paid the expenses so that he would eventually receive *60 income from Argentum and so that his stock would appreciate in value does not make the cost to him an "ordinary" expense within the meaning of the statute. See Deputy v. Dupont, supra, at 495. We said in Jacob M. Kaplan, 21 T.C. 134, 146 (1953): [In] the case of a stockholder, there may be deducted as "ordinary" only that which can be placed in the category of expenses which a substantial stockholder engaged in conserving or enhancing his estate would ordinarily incur. Typical of such ordinary expenses are the rental of safe-deposit boxes, costs of investment counsel or investment services, salaries of secretaries, and the like. * * * The expenses in this case do not fall within the class of deductions allowable under section 212. While the record indicates, and both petitioner and respondent agree, that the expenses petitioner paid were ordinary and necessary for the type of mining business Argentum conducted, the record does not show that a stockholder engaged in conserving and enhancing his estate ordinarily pays the operating expenses of a corporation in which he owns stock. While the parties both discuss whether the payments by petitioner *61 of expenses of Argentum should be considered as loans to the corporation or as capital contributions to the corporation, it is not necessary for us to consider this question. We hold that the $12,172.39 paid by petitioner for Argentum in 1967 is not properly deductible by him in that year.
Decision will be entered under Rule 155. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. There have been exceptions to the general rule that a shareholder may not deduct expenses paid for a corporation. However, these decisions involved fact situations where the expenditure was made to protect or promote the taxpayer's own business even though the expense originated with another taxpayer's business. See James L. Lohrke, 48 T.C. 679 (1967); Cubbedge Snow, 31 T.C. 585 (1958); Charles J. Dinardo, 22 T.C. 430↩ (1954). The instant case is clearly distinguishable from these cases since petitioner here had no business apart from Argentum's business with which the expenses he paid might be remotely considered to be connected. 3. Petitioner in his argument that the expenses he incurred arose from and were necessary to the fulfillment of duties expected from him as vice president of Argentum relies on Rev. Rul. 57-502, C.B. 1957-2, 118, which authorizes the deduction of cost of travel and entertainment by a corporate officer where the expenses constitute ordinary and necessary expenses of his office. Petitioner's reliance on the ruling is misplaced. As this ruling points out, an expense to be deductible must be an ordinary and necessary expense of earning the salary of the position held by the taxpayer and the burden of proving this fact rests on the taxpayer. (See Roach v. Commissioner, 20 B.T.A. 919; Jergens v. Commissioner, 17 T.C. 806) Petitioner in this case was not paid a salary by Argentum and was not under a contractual obligation to perform services or incur expenses on behalf of Argentum. There is no evidence he was required or expected as vice president of Argentum to pay the corporate expenses. In fact the clear indication from the record is that he was not. Therefore none of the expenses he paid qualified as an ordinary and necessary expense of his office with Argentum under Rev. Rul. 57-502, C.B. 1957-2, 118↩.