T.C. Summary Opinion 2004-104

UNITED STATES TAX COURT

DALE H. SUNDBY AND EDITH LITTLEFIELD SUNDBY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6977-01S.              Filed July 28, 2004.

Dale H. Sundby, pro se.

<u>Michael S. Hensley</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $26,783 and $122 for the taxable years 1991 and 1994. The issue for decision is whether petitioners are entitled to certain deductions they claimed on Schedule C, Profit or Loss From Business, in 1994. Petitioners resided in San Diego, California, on the date the petition was filed in this case.

On April 6, 1993, petitioner husband (petitioner) incorporated an entity in the State of California with the name Access Anytime Anywhere, Inc. On May 12, 1993, this corporation's name was changed to Navis Communications (Navis). On December 19, 1993, petitioner signed a document as director of Navis that, inter alia, named petitioner as the chairman, president, chief executive officer (CEO), secretary, and chief financial officer of Navis. By letter dated May 2, 1994, Navis was notified by the Internal Revenue Service that its election to be treated as an S corporation had been accepted "effective beginning Jan. 1, 1994, subject to verification if we examine your return." Navis's status was suspended on December 16, 1997, and then again on June 1, 2001.

On November 9, 1994, petitioner incorporated another entity in the State of California with the name Search2000. The corporation's name was changed to Power Agent, Inc., on September 19, 1995, and its status was suspended on January 2, 2001. A Federal income tax return was filed for Power Agent in September

1996 with respect to its taxable year beginning November 9, 1994, and ending December 31, 1994.  This return reflected zero income and zero expenses.

Navis conducted business throughout 1994.  A conference table, computer supplies and software, business cards, legal services, fax repair services, and access to an information service were all purchased by Navis during that year.  In addition, Navis maintained a Federal Express shipping account and a Sprint telephone service account.

Throughout 1994, petitioner sent and received various correspondence in his capacity as CEO of Navis.  The correspondence appearing in the record can be summarized as follows.  On January 4, 1994, petitioner sent a letter as CEO of Navis to Integrated Systems Solutions Corp. of Bethesda, Maryland, concerning products under development by Navis.  On January 19, 1994, EDS Commercial Services (EDS) sent petitioner a letter concerning the development of a product known as WorkUSA. This letter stated in part:

> My proposal is that EDS and NAVIS begin a four-month design effort.  During this stage, EDS will establish a core organization staffed with the expertise necessary to further define the business processes and requirements, and design the data base, application systems and technology platform. * * * we understand the purpose of obtaining these estimates is to assess EDS' ability to deliver a full solution, we also understand that the figures may be used [by] NAVIS in obtaining financial backing from outside investors.  EDS asks that the source of these estimates be held in confidence between EDS and NAVIS until such time as NAVIS and EDS reach an agreement to proceed.

Attached to the letter was a document titled "An Estimate to NAVIS Communications", which spelled out in detail the proposal being offered by EDS to Navis. In May 1994, petitioner prepared proposals for Goldman Sachs and Sprint concerning products in development; both of these proposals indicated that they were from Navis, and both named petitioner as the CEO thereof. On September 1, 1994, Price Waterhouse, L.L.P., sent a letter to petitioner as CEO of Navis. This letter stated that "Navis Communications has asked Price Waterhouse to conduct a market evaluation study of its new product SEARCHNET, to be launched in November 1994", and the letter concluded by stating that "we are confident that we can successfully help Navis determine the market penetration and initial marketing program required for a successful launch of SEARCHNET." Throughout 1994, Navis also entered into a variety of confidentiality and nondisclosure agreements with a number of individuals and business entities. There is no evidence in the record indicating that a tax return was filed for Navis with respect to 1994 or any other taxable year.

Petitioner gained a business advantage from the incorporation of Navis insofar as the corporation gave petitioner "a more legitimate base, versus Dale Sundby the sole proprietor" in his business dealings.

Petitioners filed a Schedule C with their joint Federal income tax return for taxable year 1994. The Schedule C, which named petitioner as the proprietor of a business engaged in "information services", listed the following gross receipts and deductions:

| | |
|---|---:|
| Gross receipts | -0- |
| Car and truck expenses | $4,606 |
| Depreciation and section 179 expense | 13,930 |
| Employee benefit programs | 7,897 |
| Legal and professional services | 6,379 |
| Office expense | 15,188 |
| Supplies | 2,936 |
| Travel | 9,443 |
| Meals and entertainment | 2,815 |
| Utilities | 3,706 |
| Home office expense | 22,169 |
| Net loss | (89,069) |

Taking into account the Schedule C loss, petitioners reported adjusted gross income of negative $80,020 and zero tax liability for 1994. Petitioners also filed a Form 1045, Application for Tentative Refund, on which they requested a tentative refund for 1991 on account of a net operating loss (NOL) carryback from 1994 to that year of $81,923. Respondent issued petitioners a refund of $26,783 in accordance with this request.

In the notice of deficiency, respondent determined that petitioners are not entitled to deduct the $89,069 claimed as

trade or business expenses in 1994.[1]  The notice of deficiency

states:

> It is determined that the amount of $89,069.00 as a loss
> from an information services business for the taxable year
> ended December 31, 1994 is not allowed because you did not
> establish that such an activity constitutes a bona fide
> business entered into for profit.  Further, it has not been
> established that the claimed expenses were incurred or, if
> incurred, paid by you during the taxable year for ordinary
> and necessary business purposes or that any claimed amount
> qualifies as an allowable deduction under the provisions of
> the Internal Revenue Code.  Further, it has been determined
> that the claimed Schedule C expenses are start-up
> expenditures and not deductible in the taxable year ended
> December 31, 1994 under section 162 of the Internal Revenue
> Code.  Further, it has been determined that the claimed
> Schedule C expenses were not your expenses but those of the
> corporations, Search 2000 and Navis Communications.
> Accordingly, with the disallowance of all of your Schedule C
> expenses and home office expenses taxable income is
> increased $89,069.00.

Because the Schedule C expenses were disallowed, respondent also

determined that petitioners are not entitled to the NOL carryback

from 1994 to 1991.  The entire amount of the 1991 deficiency of

$26,783 results from the disallowance of the NOL carryback and

related computational adjustments.  With respect to 1994,

respondent also determined that income of $866 received by

petitioner wife from Personalized Workout of La Jolla, Inc., is

subject to self-employment income tax.  This adjustment gives

rise to the entire amount of the 1994 deficiency of $122.

Despite stating a general objection to the 1994 deficiency in

---

[1]In lieu of the home office expense deduction of $22,169,
respondent allowed petitioners additional itemized deductions for
taxes and mortgage interest totaling the same amount.

their petition, petitioners did not address this underlying adjustment in the petition, at trial, or in their brief. We therefore consider the issue to have been abandoned by petitioners.

The sole dispute in this case is whether petitioners are entitled to the Schedule C deductions claimed in 1994. If petitioners are entitled to the deductions, they are also entitled to the NOL carryback to 1991. Petitioners' primary arguments at trial and in their brief can be summarized as follows: Petitioner was engaged in a trade or business outside of the corporations that he owned, and the Schedule C expenses are his individual expenses rather than those of a corporation; or, in the alternative, because Navis was an S corporation, all of its expenses should have passed through to petitioner, allowing petitioners to deduct those expenses on their individual return. Petitioners also argue that they are entitled to Schedule C deductions in amounts greater than those claimed on their return.

A taxpayer generally may not deduct personal, living, and family expenses. Sec. 262(a). Expenses that are ordinary and necessary in carrying on a trade or business of the taxpayer, on the other hand, generally are allowed as deductions to the taxpayer in the year in which they are paid or incurred. Sec. 162(a). A taxpayer is engaged in a trade or business if the

taxpayer is involved in the activity with continuity and regularity and with the primary purpose of making a profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). However, the trade or business of a taxpayer is separate and distinct from the trade or business of a corporation owned by that taxpayer. Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943). The Supreme Court has stated:

> The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * [Id. at 438-439; fn. refs. omitted.]

Because the corporation is a separate taxable entity, the expenses paid or incurred in carrying on the trade or business of the corporation are deductible by the corporation rather than by its shareholders. Sec. 162(a); Moline Props., Inc. v. Commissioner, supra; Deputy v. du Pont, 308 U.S. 488, 494 (1940); Weigman v. Commissioner, 47 T.C. 596 (1967), affd. per curiam 400 F.2d 584 (9th Cir. 1968). This is so even where the shareholders personally pay the ordinary and necessary expenses of the corporation's trade or business. Deputy v. du Pont, supra; Rand v. Commissioner, 35 T.C. 956 (1961). In certain circumstances, the corporate form may be disregarded where it is "a sham or unreal". Moline Props., Inc. v. Commissioner, supra at 439.

However, if a taxpayer chooses to conduct business through a corporation and gains an advantage from its use, the taxpayer is not permitted subsequently to deny the existence of the corporation for tax purposes. Id.; Weigman v. Commissioner, supra.

In general, any "small business corporation" may elect to be an "S corporation" under section 1362(a)(1). One of the effects of electing S corporation status is that income earned by the corporation is not taxed at the corporate level. Sec. 1363(a). However, taxable income is still computed at the corporate level. Sec. 1363(b). Accordingly, S corporations are required to file yearly tax returns and to provide copies of the information on those returns to its shareholders. Sec. 6037(a) and (b). The individual shareholders, in turn, are required to either report on their own returns all S corporation items consistently with the corporate return or to file a statement identifying inconsistencies or noting that a corporate return was not filed. Sec. 6037(c). Thus, the corporate entity cannot be ignored, even if the corporation has elected S corporation status. Byrne v. Commissioner, 45 T.C. 151, 157 (1965), affd. 361 F.2d 939 (7th Cir. 1966); see also Weibusch v. Commissioner, 59 T.C. 777 (1973), affd. 487 F.2d 515 (8th Cir. 1973).

Taxpayers are required to maintain records sufficient to establish the amounts of income, deductions, and other items

which underlie their Federal income tax liabilities. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

At trial, petitioner admitted that the amounts on the Schedule C are estimates, and that he cannot provide the supporting documents that were used to arrive at the amounts of the expenses shown thereon. In support of their argument that they are entitled to deductions in amounts greater than those claimed on the Schedule C, petitioners offered and the Court received into evidence hundreds of pages of receipts and invoices allegedly showing various business expenditures that were grouped into several categories corresponding to lines on the Schedule C. The summaries of the receipts and invoices provided with respect to each category are merely lists of receipts rather than any type of business record maintained contemporaneously with the conduct of the business activities--petitioner testified that petitioners assembled these records only after the examination of their return had begun. Petitioners did not maintain separate bank accounts or credit cards for use in their business activities, and the checks and credit cards that were used to pay the expenses bear the name of petitioner or petitioner wife. We conclude that petitioners have not maintained adequate books and records and that they have not properly substantiated the items claimed on their return, despite petitioners' arguments to the

contrary.  See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.[2]

Some of the receipts and invoices petitioners provided have no plausible connection to any trade or business and are clearly nondeductible personal expenses under section 262.  For example, petitioners seek to deduct the cost of installing a wireless fencing system for their dog.  There are also numerous other expenses which are likely personal with respect to which petitioners have provided inadequate explanations concerning their business purpose.  These expenses include gasoline and car washes for petitioners' family cars, as well as various travel expenses.  Petitioners introduced into evidence groups of receipts and summaries for the travel expenses, and these summaries contained notations concerning the alleged business purpose of the travel.  The notations for a July 1994 trip to Vail, Colorado, indicate that the purpose was a "Search2000 Board of Directors meeting".  However, Search2000 was not incorporated

---

[2]Sec. 7491 does not apply in this case because the underlying examination began before July 22, 1998, see Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727, when petitioners were notified by letter dated July 16, 1997, that their application for tentative refund was under examination.  We note that, had sec. 7491(a) applied, it would not have shifted the burden of proof to respondent because petitioners have not maintained adequate books and records and have not substantiated the amounts shown on their return.  Sec. 7491(a)(2).  The burden of proof remains on petitioners to show respondent's determinations in the notice of deficiency to be in error.  See Rule 142(a).

until 4 months after this alleged meeting, and the notations indicate that the meeting involved only petitioner, Archie McGill as director, and petitioner wife as vice president. The notations for another trip, this one to Hawaii in June 1994, also indicate various business meetings related to Search2000 took place. However, these alleged business meetings occurred solely between petitioner and petitioner wife over hotel dinners.

Certain receipts and invoices petitioners provided do reflect likely trade or business expenses. However, the expenses that were billed to Navis clearly were incurred by Navis rather than petitioners. We further conclude that the other business-related expenses that reflect petitioner or petitioner wife as the purchaser or payor also were expenses of Navis rather than a sole proprietorship of petitioner. Petitioner held himself out as the CEO of Navis in his business dealings, and the evidence of business activities in the record reflects that the activities were those of Navis rather than of petitioner as a sole proprietor. Other than petitioner's testimony, there is no evidence in the record supporting his contention that he was conducting his business activities as a sole proprietor--whether such a business was as a venture capitalist, as petitioners argue, or another activity--and that Navis was a mere "shell" that conducted no business. We do not accept petitioner's testimony because it is self-serving, uncorroborated, and

contradicted by the documentary evidence in the record.  See

Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992).

In their brief, petitioners argue that Navis was just one of many "ventures" operated by petitioner, and that Navis "remained dormant and was only used for interacting with potential partners", with the purpose of being available as a corporate entity for any one of petitioner's ventures should the need arise.  However, the documentary evidence demonstrates that the correspondence that was sent and received under Navis's name refers to various products or proposals offered by Navis; these products or proposals have the same names as what petitioners assert were separate business ventures.  We conclude that Navis itself was offering these products or proposals as a part of its business activities.  Petitioners further argue:

> Despite respondent's contention * * * that petitioner "states, however, that Navis was nothing more than a 'shell corporation,' and was not a separate entity from Dale Sundby, sole proprietor," petitioner never made that statement.  In fact, petitioner stated the opposite, that he was CEO of Navis, a separate entity from the sole proprietorship.  As CEO of Navis, it was not inappropriate for the petitioner to hold himself out as such.  Using Navis provided for legitimacy in signing agreements with other corporations.  Petitioner had no obligation to disclose to any of these parties that Navis had not yet received a transfer of any intellectual property * * * from the sole proprietorship, had no checking account, etc.

Because we have found that Navis rather than petitioner was carrying on the trade or business, petitioners' distinction is one without a difference.  If petitioners argue that Navis was a

separate taxable entity, the expenses they incurred were those of the corporation and therefore nondeductible by them. See Deputy v. du Pont, 308 U.S. 488 (1940). If petitioners argue that Navis was not a separate taxable entity, the entity cannot now be disregarded for tax purposes and its expenses remain nondeductible by petitioners. See Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943).

An issue involving Navis as a corporate entity was previously addressed by this Court in Sundby v. Commissioner, T.C. Memo. 2003-204. In that case, a deficiency with respect to petitioners' taxable year 1997 was before the Court. Petitioners had claimed a bad debt deduction of $350,000 on a Schedule C in 1997. We concluded that, assuming arguendo that a bona fide debt had existed, Navis would have been entitled to a bad debt deduction rather than petitioners. We stated:

> The promissory note was made between Search2000 and Navis [in 1995]. Because Navis was incorporated under the laws of the State of California and there are other indicia of its separate status, we shall treat it as a separate entity. * * * Since the promissory note was made payable to Navis, it is Navis that would be entitled to the bad debt deduction, if any were to be allowed, and petitioners have not shown that the note was transferred to them personally. Moreover, petitioners have not shown that any S corporation election was in effect for Navis for the year in issue [1997].

In reaching this conclusion, we found that Navis was a corporation when the promissory note was signed in 1995, and we held that the corporate form could not be disregarded with respect to that transaction at the time that the debt allegedly

became worthless in 1997. The Court's findings in <u>Sundby</u> are consistent with our finding in this case that the business activity conducted by petitioner in 1994 was conducted in his role as CEO of Navis rather than in a sole proprietorship, and our holding is not affected by petitioners' failure to introduce evidence of an S corporation election in the prior case.

In summary, the Court has received into evidence hundreds of pages of receipts and invoices offered by petitioner, who argues that each and every one represents a deductible expense. However, we conclude that many of the expenses are nondeductible personal expenses, see sec. 262(a), and that, to the extent that the receipts are for trade or business expenses, the expenses relate to the trade or business of Navis rather than petitioner, see <u>Moline Props., Inc. v. Commissioner</u>, <u>supra</u>. Petitioners are not now free to disregard the corporate entity for tax purposes after gaining a business advantage from its use, and the fact that petitioners personally paid certain expenses does not alter their characterization as corporate expenses. See <u>id.</u>; <u>Deputy v. du Pont</u>, <u>supra</u>; <u>Weigman v. Commissioner</u>, 47 T.C. 596 (1967); <u>Rand v. Commissioner</u>, 35 T.C. 956 (1961). Petitioners have provided no other grounds for deducting any of the remaining expenses, if any, evidenced by the receipts.[3]

---

[3]One invoice received in evidence as alleged substantiation for petitioner's Schedule C expenses, labeled by petitioners as "office/conference room upholstery fabric for chairs", listed the
(continued...)

Finally, we address a point petitioners raised at trial. Petitioners assert that the explanation in the notice of deficiency regarding the disallowance of the Schedule C expenses was too vague to allow for an adequate response. We agree that the explanation as a whole suffers from a certain lack of clarity or specificity. However, the notice of deficiency in effect sets forth several alternative theories under which respondent determined that petitioners are not entitled to any of the Schedule C deductions. The Commissioner generally is permitted to set forth alternative grounds for adjustments in a notice of deficiency, as well as to take alternative positions at trial. Doggett v. Commissioner, 66 T.C. 101 (1976). On account of our holding, however, we need not address every such argument respondent raised in this case.

Reviewed and adopted as the report of the Small Tax Case Division.

> Decision will be entered
>
> for respondent.

---

[3](...continued)
purchaser as "Edith Littlefield Sundby, SBMI Interiors". Another invoice labeled "office decorative fabric for couch" listed the purchaser only as "SBMI Interiors", while numerous other invoices for similar items list only petitioner wife as the purchaser. No mention is made of SBMI Interiors elsewhere in the record, and petitioners have not argued that petitioner wife was engaged in a trade or business of any type, other than with respect to the $866 in income that she received from Personalized Workout of La Jolla, Inc.