T.C. Memo. 1999-230

UNITED STATES TAX COURT

CHARLES A. AND CAROL M. WILLITS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15559-97.                    Filed July 13, 1999.

<u>Dan S. Maccabee</u>, for petitioners.

<u>Lisa Primavera</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

Respondent determined deficiencies in petitioners' 1992 and
1993 Federal income taxes in the amounts of $3,570 and $8,526,

_____

[1]  Unless otherwise specified, all section references are to
the Internal Revenue Code in effect for the years in issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

respectively, and an accuracy-related penalty under section 6662(a) in the amount of $714 for 1992.

The issues for decision are: (1) Whether Charles A. Willits (petitioner) is entitled to deductions relating to the Sky Shuttle activity; (2) whether petitioner Carol M. Willits (Mrs. Willits) substantiated the expenses claimed for her day care business for 1993;[2] and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1992.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time their petition was filed, petitioner resided in Washington, D.C., and Mrs. Willits resided in Huntington Beach, California.

Sky Shuttle Activity

Petitioner has degrees in civil engineering and architecture. During the years at issue, petitioner worked for the National Aeronautics and Space Administration (NASA) on projects involving aviation. Before the aviation projects, petitioner worked on the architecture of the space station.

---

[2] In the notice of deficiency, respondent contended that Mrs. Willits' day care activity was not entered into for profit. At trial respondent conceded that issue. Because of our holdings on the issues, there will be computational adjustments for self-employment tax (and the self-employment tax deduction) and itemized deductions.

Petitioner has long been interested in mass transportation problems. In the 1970's, he was involved in a project that involved mass transit technology. It is unclear what sort of role petitioner had in this project, but his participation put him in contact with other people who were involved with mass transit technology. That specific project never materialized, but petitioner stayed in contact with certain individuals (the group) who petitioner stated "shared the same vision" with him about mass transit.

Petitioner and the group[3] are advocates for a suspended light rail transit system called Sky Shuttle. Sky Shuttle, Inc., was incorporated in 1977, and petitioner was the sole shareholder and director. Sky Shuttle, Inc., did not have any assets or bank accounts. Petitioner testified that the corporation was set up to hold the name and for status when associating with other companies and in dealing with major corporations.

The corporation paid the yearly State franchise tax fee. Sky Shuttle, Inc., filed corporate tax returns for 1992 and 1993 reporting no income and claiming the franchise tax fee as an expense. During 1992 and 1993, petitioner claimed that the Sky

---

[3] Members of this group included Michael Williams, who worked with petitioner in aerospace, and Gerald McMurry, who was a specialist in suspension systems. It appears that others were involved as well, although petitioner did not name them.

Shuttle activity was conducted as a sole proprietorship, and all related expenses were deducted on petitioner's Schedule C.

Petitioner and the other members of the group did not form a partnership, nor was there any sort of formal agreement among them.  There were no arrangements with manufacturers or any government organizations.  Petitioner's role in the Sky Shuttle project was to market the idea of a suspended light rail transit system.  If the Sky Shuttle concept was sold, then the group would enter into an agreement among themselves to determine their respective shares and what each person would do.  Even though petitioner stressed that he was the sole proprietor of Sky Shuttle, he often referred to "our technology", "our material", or what "we" did with regard to Sky Shuttle activities.

According to petitioner, transportation projects are very politically driven.  In order to build a transit system, or be accepted to build one, many preliminary steps must be taken.  The Federal Government must recognize the type of transportation system (i.e., monorail, trolley, suspended light rail, etc.), and funding must be available and allocated by the Federal, State, county, or city government.  This requires political contacts and political clout with a Member of Congress who will propose the system.  Petitioner testified that there was no funding available during the years at issue.

In 1992, a proposal was submitted to the Federal Transit Administration by John G. Milliken, secretary of transportation for Virginia's Department of Transportation, in concert with Virginia Polytechnic Institute, the State University of Blacksburg, Virginia, and Sky Shuttle Corp.,[4] which is listed as the technology parent along with the Sky Shuttle Group of firms and their technologies (the Virginia proposal). Petitioner is referred to as the director of Sky Shuttle Corp., and petitioner testified that four or five people, including himself, organized the Virginia proposal. According to the Virginia proposal, Sky Shuttle Corp. lists two staff members (neither of whom is petitioner or a named member of his group), and the Sky Shuttle Group consists of 10 other companies or corporations that would contribute their technologies or expertise. It appears from the Virginia proposal that Sky Shuttle Corp. was a participant in this endeavor.

During the years at issue, petitioner and the group also had contacts with the staff of the office of Congressman Bud Shuster (who was a minority member of the Department of Transportation committee in the House of Representatives), with Aluminum Co. of America (a metal manufacturer), and with other contractors. Petitioner incurred expenses with regard to meetings and

---

[4] We find that Sky Shuttle Corp. and Sky Shuttle, Inc., are one and the same.

telephone calls to these people or groups.  No agreements were entered into between any of the parties.  Petitioner also attended trade shows and conferences related to mass transit during the years at issue.  Petitioner maintained a journal of these meetings and events.  Petitioner also noted in his journal different cities that were considering a transportation system. When meeting with members of the group, petitioner referred to them in his journal as staff.

There is evidence of one agreement with another individual. Exhibit 14-R is an agreement, typed on Sky Shuttle, Inc. stationery, between Allen Beishline and Sky Shuttle, Inc./Charles Willits in which Mr. Beishline grants to Sky Shuttle, Inc., and petitioner the rights to Mr. Beishline's wheel-hub motor design for use in transit vehicles.  The agreement was dated June 25, 1979, and was to expire in 10 years.  It appears from the Virginia proposal and petitioner's journal that Sky Shuttle was still using the wheel-hub motor design.  Petitioner testified that if the wheel-hub motor design was used, Mr. Beishline would receive a fee.

On Schedule C filed with the 1992 joint return, petitioner reported $500 in gross income[5] and claimed $12,347 in expenses for a net loss of $11,847.  On Schedule C filed with the 1993

_____

[5]  It is not clear from the record the nature of this income or whether it was even related to the Sky Shuttle activity.

joint return, petitioner reported no income and claimed $11,250 in expenses.  Petitioner earned $75,813 and $78,912 from his employment at NASA in 1992 and 1993, respectively.

In the notice of deficiency, respondent disallowed petitioner's claimed losses for lack of profit objective and failure to substantiate.  At trial, respondent contended that the expenses petitioner claimed did not properly belong to him, but belonged to the corporation.  Respondent also contends that petitioner's expenses, if not those of the corporation, were in the nature of preopening expenses.

Pursuant to section 162(a), a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  In order to be deductible, business expenses generally must be the expenses of the taxpayer claiming the deduction.  See Gantner v. Commissioner, 91 T.C. 713, 725 (1988), affd. 905 F.2d 241 (8th Cir. 1990); Hewett v. Commissioner, 47 T.C. 483, 488 (1967).  For Federal tax purposes, a corporation will be recognized as a separate taxable entity from its stockholders if either:  (1) The formation of the corporation was based on a legitimate business purpose; or (2) after formation, the corporation conducted a business activity.  See Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943).  A shareholder generally is not entitled to a deduction from his individual income for his

payment of corporate expenses. See <u>Deputy v. duPont</u>, 308 U.S. 488, 494 (1940); <u>Gantner v. Commissioner</u>, <u>supra</u>. Shareholders cannot deduct on their personal returns those expenses that have a primary purpose of furthering the business of the corporation. See <u>Leamy v. Commissioner</u>, 85 T.C. 798, 809 (1985).

It appears from the Virginia proposal that Sky Shuttle, Inc., was a participant. Petitioner testified that it was beneficial to have a corporation in order to associate with other firms and major corporations with regard to the Sky Shuttle activity. From the Virginia proposal, it is evident that Sky Shuttle, Inc., was expected to provide the technology. Petitioner stated that the other corporations were aware that Sky Shuttle, Inc., was only a paper corporation, but this is contradicted by his testimony that it was important to have the status of a corporation in order to deal with the other companies.

We find that Sky Shuttle, Inc., served its intended business function. Petitioner used Sky Shuttle, Inc., to promote the Sky Shuttle activity, and it appears that others regarded Sky Shuttle, Inc., as a participating corporation in the Virginia proposal. See <u>Moline Properties, Inc. v. Commissioner</u>, <u>supra</u> at 438-439. Therefore, any expenses incurred by petitioner on the corporation's behalf in connection with the Sky Shuttle activity

during the years at issue properly belong to the corporation and not petitioner.

Moreover, those expenses were nondeductible, preopening expenses. See sec. 195; Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded per curiam on other grounds 382 U.S. 68 (1965). Startup expenditures generally cannot be deducted or amortized except as allowed by section 195(a), which permits an election to amortize them over a period of 60 months, starting with the month in which an active business begins. Startup expenditures are defined as amounts paid or incurred in connection with: (1) Investigating the creation or acquisition of an active trade or business; (2) creating an active trade or business; or (3) any activity engaged in for profit in anticipation of the activity's becoming an active trade or business. See sec. 195(c)(1)(A). Startup costs include advertising, travel, and other expenses incurred in lining up prospective distributors, suppliers, or customers, and salaries or fees paid or incurred for executives, consultants, and similar professional services which are incurred after a decision is made to establish a business and before the business begins. See H. Rept. 96-1278, at 10, 11 (1980), 1980-2 C.B. 709, 712.

Petitioner acknowledged that there were no investors and no income, the parties did not have any plans or facilities for

manufacture, and the parties did not have any agreements or contracts (which would only be arranged upon being hired), and it appears they were merely surveying potential mass transit areas. It seems that petitioner and the group were searching for business that might or might not materialize. The fact that petitioner and the group submitted a proposal does not mean that the activity rose to the level of an active trade or business. See Kennedy v. Commissioner, T.C. Memo. 1973-15 ("the ability to transact business does not satisfy the 'carrying on' requirement of [section 162]"); see also Richmond Television Corp. v. United States, supra.

In light of our holding that petitioner is not entitled to deduct any expenses related to the Sky Shuttle activity for the reasons stated, we need not address the section 183 or substantiation issues.

Day Care Expenses

Mrs. Willits has been a State-licensed day care provider since 1979. She was allowed a maximum of four infants and two school-age children (who would come after school). Mrs. Willits would care for the infants until they reached 18 to 20 months of age. Mrs. Willits started her day care activities at 7 a.m. She would make sure the areas in her home were prepared for the arrival of the children by 7:30 a.m. The children usually left around 5 p.m. On weekends, Mrs. Willits cleaned the house and

yard, did laundry, and shopped for food and supplies for the day care activity.  Mrs. Willits would operate the day care for about 48 weeks per year, allowing herself time for vacation.

During 1993, Mrs. Willits cared for three infants.  She charged $100 per week for each child.  The kitchen, family room, and backyard were allocated to the day care activity.  When the children napped, they would do so in the den, the spare bedroom, and the master bedroom.  The children would play in the enclosed backyard where there were toys and playground equipment.  Mrs. Willits hired a gardener to maintain the yard.

On her Schedule C, filed with petitioners' joint return for 1993, Mrs. Willits reported $14,200 in gross receipts and claimed the following expenses:

| Expense | Amount |
| --- | --- |
| Advertising | $165 |
| Car and truck | 987 |
| Depreciation | 217 |
| Insurance | 600 |
| Legal & profl. | 300 |
| Office | 350 |
| Supplies | 450 |
| Dues and pubs. | 140 |
| Laundry and cleaning | 1,200 |
| Business gifts | 250 |
| Diapers/baby supplies | 945 |
| Food | 2,700 |
| Yard maint. | 1,250 |
| Telephone | 390 |
| Total | 9,944 |

Mrs. Willits also claimed a deduction of $3,437 for business use of home on attached Form 8829.  Mrs. Willits' net profit from

the day care activity was $819.  Respondent disallowed all of the claimed expenses for lack of substantiation.

Both petitioner and Mrs. Willits testified that they maintained records of their expenses and that they turned these records and receipts over to their accountant.  However, the accounting firm with which the accountant had been associated split apart, and as a result, records were lost.  None of the records were reconstructed.  Mrs. Willits was able to substantiate only certain expenses by her testimony, but for the most part Mrs. Willits' testimony lacked detail, and she had difficulty with her recollection of the expenses.

Section 162(a) allows the deduction of "ordinary and necessary" expenses paid or incurred during the taxable year in carrying on any trade or business.  Whether an expenditure is ordinary and necessary is a question of fact.  See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  An ordinary and necessary expense is one which is appropriate and helpful to the taxpayer's business and which results from an activity which is a common and accepted practice in the business.  See Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir., Dec. 22, 1983).

Deductions are a matter of legislative grace.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Taxpayers must keep sufficient records to establish deduction amounts.  See sec.

6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).
Generally, except as otherwise provided by section 274(d), when
evidence shows that a taxpayer incurred a deductible expense, but
the exact amount cannot be determined, the Court may approximate
the amount.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d
Cir. 1930).  The Court, however, must have some basis upon which
an estimate can be made.  See Vanicek v. Commissioner, 85 T.C.
731, 742-743 (1985).

A strict substantiation requirement exists under section
274(d)(3) and (4) for gifts and for certain property listed under
section 280F(d)(4), which includes passenger automobiles.
Taxpayers must substantiate by adequate records the following
items in order to claim deductions:  (1) The amount of such
expense or other item; (2) the time and place of the travel, or
use of the facility or property, or the date and description of
the gift; (3) the business purpose of the expense or other item;
and (4) the business relationship.  See sec. 274(d).

To substantiate a deduction by adequate records, a taxpayer
must maintain an account book, diary, log, statement of expense,
trip sheets, and/or other documentary evidence which, in
combination, are sufficient to establish each element of
expenditure or use.  See sec. 1.274-5T(c)(2)(i), Temporary Income
Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

In respondent's posttrial opening brief, respondent "accepts" petitioners' computation of a 48-percent use of the home for the day care business and states: "The Court should allow [Mrs. Willits] deductions for expenses pursuant to the Cohan rule."

In respondent's posttrial reply brief, respondent states:

> Notwithstanding the foregoing, however, respondent would suggest that petitioners be allowed a deduction for expenses for the day care business (including business use of the home) in the total amount of $10,000. That amount consists of $7,385 in total expenses, plus $2,615 for business use of their home. Respondent bases these figures on the deductions claimed on [Mrs. Willits'] Schedule C attached to petitioners' 1992 return.

We believe respondent has therefore conceded that petitioners are entitled to business expense deductions of $10,000 for 1993, and we so hold. Furthermore, after careful consideration of the record, we hold that petitioners have not established that they are entitled to any deduction in excess of what respondent generously conceded.

Accuracy-Related Penalty

The final issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a) for negligence or intentional disregard of rules or regulations for the 1992 tax year. Section 6662(a) provides that, if it is applicable to any portion of an underpayment in taxes, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies. Section 6662(b)(1)

provides that section 6662 shall apply to any underpayment attributable to negligence or disregard of rules or regulations. "Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). A position with respect to an item is attributable to negligence if it lacks a reasonable basis. See sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and good faith within the meaning of section 6664(c)(1) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Generally, the duty of filing an accurate return cannot be avoided by placing the responsibility on a tax return preparer. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). Although a taxpayer remains liable for a deficiency attributable to a return prepared by an accountant, a taxpayer who supplies a qualified tax return preparer with all relevant information and who reasonably and in good faith relies on the preparer's advice

is not negligent and has not disregarded rules or regulations, even if the advice is incorrect and results in a deficiency.  See Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

Petitioners' 1992 return was prepared by an accountant. Petitioner testified that he relied on his return preparer to fill out petitioners' joint return properly.  However, petitioners did not call their accountant to testify on their behalf, nor did petitioners demonstrate that they provided the accountant with all relevant facts and information with respect to the Sky Shuttle activity.  Therefore, we hold that petitioners are liable for the accuracy-related penalty pursuant to section 6662(a).

To reflect the foregoing,

Decision will be entered under Rule 155.