T.C. Memo. 1999-299


UNITED STATES TAX COURT


SHERYL D. BUMPUS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8507-98.                    Filed September 7, 1999.


<u>Yale F. Goldberg</u> and <u>Mitzi L. Torri</u>, for petitioner.

<u>David A. Winsten</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


CARLUZZO, <u>Special Trial Judge</u>:  Respondent determined a deficiency of $8,041 in petitioner's 1995 Federal income tax.

The issue for decision is whether petitioner, who was an officer and shareholder of a closely held corporation, is entitled to a deduction for a lease cancellation fee (the fee) paid to release the corporation from liability under a lease.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Glendale, Arizona.

During 1995 petitioner was employed as a sales representative for two companies that manufactured construction materials. She was an independent contractor for one and an employee of the other.

With the assistance of legal counsel, petitioner and Richard Schuster, a long-time friend with metal fabrication experience, incorporated Drywall Cornerbead, Inc. (Drywall). According to Drywall's Articles of Incorporation, which were filed June 9, 1995, the corporation was organized "for the purpose of transacting any and all lawful business for which corporations may be incorporated under the laws of the State of Arizona." Its initial purpose was "to conduct in the State of Arizona the business of manufacturing and distributing drywall and plastering products."

Petitioner opened a checking account for Drywall and deposited $100 of her money into the corporation's account. An Arizona sales tax exemption certificate was issued to Drywall, as was a Federal employer identification number. Drywall secured workers' compensation insurance, although the corporation had no employees other than its officers.

In June 1995, Drywall, as the lessee, and Marchant Corporation (Marchant), as the lessor, entered into a lease agreement for certain industrial property (the lease). The property was to be used by Drywall for manufacturing and distribution purposes. The term of the lease was 3 years beginning on August 1, 1995. Base rent, which increased from year-to-year, was initially $4,998.30 per month. A $5,664.74 security deposit was due when the lease was signed but the deposit was not made at that time. Petitioner and Mr. Schuster signed the lease as officers of Drywall; neither signed the lease in an individual capacity. Corwon J. Finley, petitioner's personal friend and business associate, was a guarantor on the lease, as was a corporation that he apparently controlled.

By checks dated June 20, 1995, drawn on her personal checking account and made payable to Marchant, petitioner: (1) Made the security deposit required under the lease; and (2) paid the first month's rent, which was due August 1. The rent check was for $5,255.71. The parties did not explain why the amount was higher than required under the lease.

Soon after the lease was signed, Mr. Schuster decided that he no longer wanted to be involved with Drywall. Petitioner believed that she could not successfully operate Drywall without Mr. Schuster and decided to abandon the project.

The lease was canceled, and Drywall was released from liability under the lease in return for the payment of $9,996.60 (the lease cancellation fee). The lease cancellation fee was paid by cashier's check made payable to Marchant. The cashier's check was purchased by Mr. Finley, either in his individual capacity or as an officer of a corporation that he controlled. Mr. Finley delivered the check to petitioner, who in turn delivered it to Marchant.

Drywall was dissolved on August 31, 1995. Drywall did not issue stock, conduct an organizational meeting, adopt bylaws, or file a Federal income tax return. The balance in Drywall's checking account (petitioner's initial $100 deposit) was withdrawn by petitioner, and the account was closed.

Petitioner's 1995 Federal income tax return was timely filed. On a Schedule C included with that return petitioner reported various items attributable to her self-employment as an independent sales representative. Relevant for our purposes, on that Schedule C she claimed a $26,918 deduction for rent on business property. Of this amount, $15,997 was disallowed in the notice of deficiency because petitioner "did not establish that the * * * expense * * * was paid or incurred during the taxable year and that the expense was ordinary and necessary to * * * [her] business". Other adjustments made in the notice of deficiency have been resolved by the parties.

OPINION

The rent deduction claimed on petitioner's return is attributable to the lease and takes into account: (1) The security deposit; (2) rent for the first month; and (3) the lease cancellation fee. The balance of the deduction ($6,000) has not been identified. The controversy between the parties focuses on whether petitioner is entitled to include the lease cancellation fee in the rent deduction.

Although the lease cancellation fee was paid with a cashier's check purchased by Mr. Finley, petitioner considers that the payment was made by her. According to petitioner, she, in effect, borrowed the funds from Mr. Finley and repaid him over a period of time. Petitioner contends that the deduction is allowable under section 162,[1] which, in general, allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

Respondent argues that petitioner is not entitled to a deduction for the lease cancellation fee because the fee was not paid by her. According to respondent, the fee was paid by Mr. Finley as the guarantor on the lease. Respondent further argues that the fee, even if paid by petitioner, was an expense of

---

[1]Section references are to the Internal Revenue Code of 1986, as amended and in effect for the year 1995. Rule references are to the Tax Court Rules of Practice and Procedure.

Drywall, and, if deductible, could only be deducted by Drywall. Because we agree with respondent on this point, we need not address the controversy between the parties as to whether the lease cancellation fee should be considered to have been paid by petitioner or Mr. Finley.

A corporation formed for legitimate business purposes is an entity separate from its shareholders. See Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Furthermore, the business of a corporation is separate and distinct from the business of its shareholders. See id.; Deputy v. du Pont, 308 U.S. 488, 494 (1940); Crook v. Commissioner, 80 T.C. 27, 33 (1983), affd. without published opinion 747 F.2d 1463 (5th Cir. 1984). Consequently, a shareholder generally is not entitled to a deduction for the payment of corporate expenses. See Deputy v. du Pont, supra; Hewett v. Commissioner, 47 T.C. 483 (1967). Petitioner agrees with these general legal principles but argues that the principles do not apply because Drywall's existence should be disregarded for Federal income tax purposes. According to petitioner, Drywall did not take sufficient, if any, action to further its corporate business purpose. We disagree.

A corporation will be recognized for Federal income tax purposes as a taxable entity separate from its shareholders if (1) the purpose of incorporation was the equivalent of business activity, or (2) the corporation carried on business after

incorporation.  See <u>Moline Properties, Inc. v. Commissioner</u>, <u>supra</u>.

Drywall's corporate existence was effective as June 9, 1995, the date that its articles of incorporation were filed.  See Ariz. Rev. Stat. sec. 10-056 (1995) (repealed, effective January 1, 1996).  Drywall was incorporated in connection with petitioner's intention to start a business.  Her decision to conduct the business in corporate form was deliberate, reasoned, and made with the assistance of legal counsel.  Thereafter, Drywall opened a checking account, obtained an Arizona sales tax exemption certificate, was issued a Federal employer identification number, and secured workers' compensation insurance.  Through the lease Drywall arranged for a physical plant that furthered its manufacturing and distribution objectives.

The obligation to make the lease cancellation fee arose under the lease.  Because petitioner did not sign the lease in her individual capacity, she enjoyed the limited liability aspect of the corporate form of business, which, no doubt, was one of the reasons that Drywall was established.  Any obligation, legal or otherwise, that petitioner might have owed to Mr. Finley in connection with the lease cancellation fee did not arise from the lease.

Having elected to conduct the business in corporate form, petitioner is bound by the Federal income tax consequences of that election. See Higgins v. Smith, 308 U.S. 473 (1940). Drywall's corporate existence cannot be disregarded for Federal income tax purposes, and petitioner's argument that it should be is rejected. Because the lease cancellation fee was an expense of Drywall, petitioner is not entitled to include the payment of the fee in the rent expense deduction claimed on her return. Respondent's determination in this regard is sustained.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.
