T.C. Summary Opinion 2004-82


UNITED STATES TAX COURT


LUIS ACLE, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20069-02S.                    Filed June 23, 2004.


Luis Acle, Jr., pro se.

<u>Donna L. Pahl</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $40,818, and an accuracy-related penalty of $7,683.20, for the taxable year 1998.

The issues for decision are: (1) With respect to petitioner's rental activities, whether the losses petitioner incurred are subject to the passive activity loss limitations of section 469; (2) with respect to petitioner's business activities, (a) whether petitioner received unreported income as determined by respondent, and (b) whether petitioner is entitled to a business expense deduction disallowed by respondent; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a). The adjustments in the notice of deficiency to the itemized deductions and to the self-employment income tax and the deduction therefor are computational and will be resolved by the Court's holding on the issues.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in San Diego, California, on the date the petition was filed in this case.

Petitioner filed a Federal income tax return for taxable year 1998 with the filing status of head of household. Petitioner reported $300 of interest income, a $6,760 business loss, and a $62,297 loss from rental activities, for an adjusted

gross income of negative $68,757.  Petitioner also claimed

dependency exemption deductions for two daughters and itemized

deductions of $25,288 for mortgage interest and real estate

taxes, resulting in a taxable income of negative $102,145, and

zero tax liability.

## 1.  Petitioner's Rental Activities

During 1998, petitioner owned or held partial ownership

interests in seven separate rental properties.  Petitioner is not

a real estate professional, and he did not personally manage any

of the rental properties.  Three of the properties are in the San

Diego area and during 1998 were professionally managed by Westman

Property Management.  The other four properties are located in

the Washington, D.C., area and during 1998 were professionally

managed by Yarmouth Property Management.  On his Federal income

tax return, petitioner reported the following income and expenses

with respect to the rental properties, reporting an overall

deductible loss of $62,297:

|  | California Properties | | | Washington, D.C., Area Properties | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
|  | San Diego | San Diego | Spring Valley | Arlington Virginia | Wash. D.C. | Wash. D.C. | Wash. D.C. |
| Rents received | $9,950 | $11,160 | $104,488 | $13,620 | $36,016 | $26,365 | $48,962 |
| Less cash expenses | 9,871 | 8,490 | 88,781 | 17,832 | 38,530 | 37,786 | 56,630 |
| Less depreciation | 467 | 1,167 | 19,089 | 7,999 | 8,145 | 8,399 | 9,672 |
| Gain (loss) | ($388) | $1,503 | ($3,382) | ($12,211) | ($10,659) | ($19,820) | ($17,340) |

Petitioner did not directly receive the rents from these

properties.  Instead, the rental management companies collected

the rents, paid the related expenses, and then billed petitioner

for the expenses which were in excess of the total amount of rent collected, if necessary.

In the notice of deficiency, respondent disallowed $59,918 of the losses claimed by petitioner with respect to the rental properties. Although petitioner disputes the disallowance of the losses, he has made no arguments with respect to this issue, and at trial he stated that this issue "seems to be a matter of law".

Section 469 imposes limits on deductions for losses from any passive activity. Under section 469(a)(1), an individual may not deduct a passive activity loss, which is defined in section 469(d)(1) to be the excess of the individual's aggregate losses from passive activities over his aggregate income from passive activities. As a general rule, any rental activity is a passive activity. Sec. 469(c)(2). A rental activity in turn is "any activity where payments are principally for the use of tangible property". Sec. 469(j)(8). Although certain exceptions apply to this general rule, petitioner does not assert, and the record does not show, that any such exceptions apply in this case. Thus, petitioner's rental activities with respect to the seven properties are passive activities, and petitioner is not allowed a deduction for his aggregate losses with respect thereto. Sec. 469(a)(1). Respondent disallowed $59,918 of the claimed deduction of $62,297 with respect to petitioner's rental activities; it is not clear from the record why respondent determined that a portion

of the loss was allowable. Respondent has not sought to disallow the remaining $2,379 of the loss, and we therefore do not address respondent's calculation of the allowable amount of the loss.

2. Petitioner's Business Activities

During the year in issue, petitioner was engaged in certain business consulting activities. In connection with these consulting activities, petitioner served as the chief executive officer of an entity named North American Free Trade Association (NAFTA), which is incorporated in Mexico. In this position, petitioner would provide services to foreign companies seeking to do business in Mexico. Petitioner would allow his clients, the foreign companies, to use the address of NAFTA's office in Mexico City. NAFTA maintained a bank account in Mexico.

Petitioner also operated a business activity under the name of Occidental Utilities (OU). While petitioner entered into at least one agreement with a client in which petitioner asserted that OU was a Delaware corporation, petitioner does not recall incorporating OU, and in any event petitioner conducted business only as a sole proprietor under that name. In this business activity, petitioner provided consulting services within the utilities industry. In 1996 or 1997, petitioner entered into a contract with a business known as San Luis Tank to provide consulting services. In connection with this agreement, San Luis Tank issued petitioner a Form 1099-MISC, Miscellaneous Income,

reflecting a payment of $12,000 to petitioner in 1998. Petitioner's relationship with San Luis Tank lasted until that business ceased operations in 2000.

Also during 1996 or 1997, petitioner entered into a contract with PSEG Global, Inc., to provide consulting services. PSEG Global was interested in building and operating a power plant in San Luis, Mexico. During 1998, petitioner assisted PSEG Global by performing various tasks including negotiating with the Mexican government, acting as a conduit in obtaining the proper certifications and permits that are required in Mexico, and engaging in other business negotiations. Petitioner prepared monthly billing invoices for the work he performed for PSEG Global. These invoices indicate that they are from "Luis Acle, Occidental Utilities", and the total amount billed by petitioner in 1998 was $160,310. Of this amount, $140,763 was for services petitioner rendered and $19,548 was for expenses he incurred. On certain occasions, PSEG Global would refuse payment of certain charges or modify the amount requested. PSEG Global's records indicate the addition of three payments other than those shown on petitioner's invoices, totaling $11,679, and the omission of one payment of $12,360 that was requested by petitioner on an invoice. The one payment that petitioner requested but which is not shown on PSEG Global's records as having been paid is a request for fees of $10,000 and expenses of $2,360, on an invoice dated November

25, 1998.  Although PSEG Global's records reflect payments to petitioner in 1998 totaling $159,629, PSEG Global issued petitioner a Form 1099-MISC on which it reported payments to petitioner totaling $168,598 during that year.  Petitioner ceased working on behalf of PSEG Global in 1999.

During 1998, petitioner maintained at least two bank accounts in the United States.  The first was maintained under the name of OU at Wells Fargo Bank, and the second was maintained under the names of petitioner and M. Cristina A Robles at Home Savings of America.  Amounts totaling $269,767 were deposited into the first account, and $55,389 was deposited into the second account.[1]

Petitioner filed a Schedule C, Profit or Loss From Business, with his Federal income tax return for taxable year 1998.  This schedule named petitioner as the proprietor of a business engaged in "international business consulting".  The schedule listed the name of the business as "NAFTA", and it provided an address in Mexico City.  Neither party addressed the use of petitioner's corporation's name on the Schedule C.  Based on petitioner's testimony and other evidence in the record, we conclude that the

---

[1]The total deposit amounts are those reflected in the bank deposit summaries prepared by respondent.  Respondent calculated the amount of the deposits using the account statements provided by petitioner.  Several of these statements were not available, leaving gaps of approximately 2 weeks with respect to Wells Fargo Bank and approximately 6 weeks with respect to Home Savings of America.  Respondent based his determination solely on the time periods for which bank statements were available.

Schedule C was filed for OU rather than for NAFTA. Petitioner reported Schedule C gross receipts of $116,280 and claimed deductions totaling $123,040 for various expenses, for an overall loss of $6,760. One of the expenses claimed as a deduction by petitioner is in the amount of $17,000 and is described as "administrative Mexico".

In the notice of deficiency, respondent determined that petitioner received $144,102 in unreported income from his business activities. Respondent calculated this amount as follows:

| | |
|---|---|
| Bank deposits | $325,155 |
| Less transfers between accounts | 26,095 |
| Less line of credit advances | 38,678 |
| Less gross receipts reported on return | 116,280 |
| Unreported income | $144,102 |

Respondent now concedes that the amount of unreported income should be reduced by $7,745 to $136,357 to reflect credit card overdraft transfers into petitioner's accounts. Respondent also disallowed in the notice of deficiency the $17,000 deduction claimed by petitioner as "administrative Mexico". Respondent allowed the deductions for each of the other expenses claimed by petitioner on the Schedule C.

A.  Unreported Income

Gross income generally includes "income from whatever source derived", unless specifically excluded by statute.  Sec. 61(a). Taxpayers are required to maintain records sufficient to establish the amounts of income, deductions, and other items which underlie their Federal income tax liabilities.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  If a taxpayer fails to keep adequate books and records, the Commissioner may reconstruct the taxpayer's income by any method that is reasonable under the circumstances. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); see also United States v. Fior D'Italia, Inc., 536 U.S. 238, 243 (2002) (stating that the assessment authority of the IRS is not exceeded "when the IRS estimates an individual's tax liability--so long as the method used to make the estimate is a 'reasonable' one").  The reconstruction need not be exact, so long as it is reasonable and substantially correct.  Petzoldt v. Commissioner, supra at 693; Meneguzzo v. Commissioner, 43 T.C. 824 (1965).  The use of bank deposits is recognized as a reasonable method of reconstructing income.  Parks v. Commissioner, 94 T.C. 654, 658 (1990); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978).  This method is premised on the assumption that the deposits into a taxpayer's account consist of income from taxable sources.  See sec. 61(a).

As a general rule, a taxpayer bears the burden of proving the Commissioner's determinations in a notice of deficiency to be in error. Rule 142(a).[2] Certain courts have recognized a limited exception to the general rule where the notice of deficiency determines that the taxpayer failed to report income. Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980); Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977). In such circumstances, the Commissioner must come forward with evidence establishing a minimal foundation, which may consist of evidence linking the taxpayer with an income-producing activity. Petzoldt v. Commissioner, supra at 689. In the present case, petitioner does not dispute that he received income with respect to the relevant business activities.

Petitioner argues that respondent's determination concerning the receipt of unreported income is in error. To this effect, petitioner argues that he

> received a certain amount of money as compensation for my services. I acknowledged that, and that was reported. There are additional amounts that were third party expenses that had nothing to do with me for which I was nonetheless responsible. There were a number of deposits that were made from one account to another, primarily because the expenses,

---

[2]Sec. 7491(a), which shifts the burden of proof to the Commissioner under certain circumstances, does not apply with respect to any factual dispute in this case because petitioner did not keep adequate books and records and did not meet statutory substantiation requirements. Sec. 7491(a)(2)(A) and (B).

including the real estate expenses, were coming out of those accounts.

Therefore * * * my contention is that a number of these additional amounts that are presumed by the IRS to be income are simply transfers from one account to another or deposits that were made after money was taken from that same account. Therefore, a lot of money was counted two or three times.

In addition, * * * I would suggest that there are a number of expenses, including all of those for St. Luis Tank, that were expenses channeled through me and going to other people, including specifically people who were providing services to that company, without it being any income to me or expendable, nor was it claimed as an expense fund.

Thus, petitioner argues that a portion of the deposits consists of reimbursements for expenses petitioner incurred on behalf of clients, and that a portion of the deposits consists of transfers between accounts or amounts that were withdrawn and redeposited into the same account. Petitioner does not provide details concerning specific amounts of either the alleged reimbursements or the alleged transfers.

In certain cases, reimbursements received by a taxpayer engaged in a trade or business for expenses incurred on behalf of another are not included in the taxpayer's gross income. Gray v. Commissioner, 10 T.C. 590 (1948). However, in the absence of adequate records and proper substantiation, it remains the taxpayer's burden to show error in the Commissioner's determination that bank deposits are income. Sec. 7491(a); Rule 142(a); Tokarski v. Commissioner, supra at 76-77.

The only corroborating evidence in the record showing that petitioner received reimbursements from his clients lies in the

invoices that petitioner submitted to PSEG Global on which he requested reimbursement for expenses totaling $19,548. PSEG Global's records indicate that the company paid all but $2,360 of these expenses in accordance with petitioner's requests for payment. Petitioner, however, claimed deductions for numerous expenses on his Schedule C, in an amount totaling $123,040. Respondent has not challenged $106,040 of these deductions, some of which are for expenses that are of the same type as those for which petitioner requested reimbursement from PSEG Global. Because petitioner's Schedule C was filed for his consulting business, and PSEG Global was the primary source of income for this business, we conclude that the Schedule C deductions substantially encompass the expenses for which petitioner was reimbursed by PSEG Global. A taxpayer is not entitled to both exclude an amount from income as a reimbursement of an expense and then deduct the same amount as a business expense. See generally sec. 1.161-1, Income Tax Regs. (providing that "Double deductions are not permitted".). Because petitioner has failed to provide records of any sort supporting the amount of his deductions, the Court cannot ascertain whether the $17,188 in reimbursements petitioner received is wholly reflected in the $106,040 of allowed expenses that he claimed as deductions on his return. We conclude that petitioner has failed to show either that he is entitled to exclude from income any portion of the reimbursements he received

from PSEG Global, or that he is entitled to additional deductions with respect to the underlying expenses. See Rule 142(a).

Petitioner further argues that he received reimbursements from other sources, such as San Luis Tank. However, petitioner has presented no credible evidence that any of the amounts deposited into his bank accounts were reimbursements for expenses incurred on behalf of San Luis Tank or any other entity or individual. The only evidence to this effect was petitioner's own self-serving, uncorroborated testimony, which we do not find to be credible: At more than one point in his testimony, petitioner stated that he could not recall the purpose of individual withdrawals or deposits noted on his bank account statements.

Petitioner's next argument is that a portion of the deposits into his accounts consists of transfers between accounts or amounts that were withdrawn and subsequently redeposited into the same account. The only evidence in the record pertaining to this argument lies in bank statements from the bank accounts at Wells Fargo Bank and Home Savings of America, and copies of checks drawn on the Wells Fargo account. While petitioner was unable to discuss the bank statements in detail, certain of the Wells Fargo checks clearly indicate that they were for transfers to another account. However, the total amount of these checks is less than the amount already taken into account as transfers in respondent's calculation. Other Wells Fargo checks were written to Household

Bank; these checks represent mortgage payments by petitioner. Most of the remaining checks were written to petitioner himself or to Wells Fargo, presumably indicating that on some occasions petitioner was withdrawing cash from his account. There is no evidence that any such withdrawal was redeposited into petitioner's account. To the contrary, there is evidence that at least a portion of such funds was used to make payments on a line of credit or another loan. In summary, we find that the Wells Fargo checks do not refute any aspect of respondent's calculation of petitioner's unreported income.

Other than the two general arguments discussed above, petitioner has not presented any specific objections to respondent's reconstruction of petitioner's income. For example, petitioner has not argued that any individual deposit is from a nontaxable source, nor has petitioner asserted, or provided evidence tending to show, that any deposit was from an alternative source, such as a savings account.

Finally, petitioner summarizes his argument that respondent's determinations are in error by stating:

> I think that there is clear evidence of the fact that there is a certain amount of necessary recycling of this money for the reasons that I have explained to the points that there's no way that anybody could say that this clearly reflects income.

We disagree with petitioner. While respondent's reconstruction of petitioner's records certainly is not exact, we find the

reconstruction to be substantially correct and to be a more accurate reflection of petitioner's income than what was reported on his return. See Petzoldt v. Commissioner, 92 T.C. at 687; Meneguzzo v. Commissioner, 43 T.C. 824 (1965). Although the amount of income exceeds that which was reported on the two Forms 1099-MISC appearing in the record, at least one of the forms has been shown to be inaccurate. Furthermore, the forms were issued by only two sources; it is reasonable to conclude that petitioner had other income generated from his business activities during 1998, either directly from his operation of OU or indirectly through his corporation, NAFTA. There is no evidence in the record establishing the amount of income that petitioner derived from NAFTA. Finally, according to the information reported by petitioner on his 1998 return, petitioner had a negative taxable income of $102,145. Petitioner has not explained how he would have been able to pay the disproportionately large amount of expenses shown on his return in comparison to the gross income that he reported, while at the same time maintaining a standard of living for himself and for his two daughters, whom he claimed as dependents.

We sustain respondent's determination concerning petitioner's unreported income, as adjusted for respondent's concession that

petitioner had $7,745 less unreported income than the amount determined in the notice of deficiency.[3]

B.  Business Expense

Petitioner argues that respondent's disallowance of the $17,000 Schedule C deduction for "administrative Mexico" is in error.  Petitioner stated at trial that the $17,000 represents the "cost of doing business" in Mexico City.  In particular, petitioner asserts that he lost office equipment valued at "a little over $10,000" in a burglary, and that he was forced to scrap an automobile--because "the oil pump or something had gone bad and the car was basically ruined"--for which he "took a little over a $7,000 loss".

It is unclear from the record whether the office to which petitioner refers in his testimony regarding this issue was the office of NAFTA, petitioner's Mexico City-based corporation.  A corporation formed for legitimate business purposes is an entity

---

[3]We briefly address a factual issue that was not discussed by either party--the interrelationship between the rental activity issue and the unreported income issue.  In light of petitioner's burden of proof in this regard, see Rule 142(a), we note that the record does not support a finding that any of the amounts deposited into petitioner's bank accounts were derived from the rental activities.  We reach this conclusion based upon the record as a whole, which establishes, inter alia, that the property management companies rather than petitioner collected the rents and paid the expenses therefrom; that petitioner held only partial ownership interests in several of the properties; that petitioner may have held bank accounts other than the two named above; and that no deposits listed in the bank statements have been identified as having been derived from the rental properties.

separate from its shareholders, and the business of the corporation is separate and distinct from the business of its shareholders. Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943); Deputy v. du Pont, 308 U.S. 488, 494 (1940). Thus, a shareholder generally is not entitled to a deduction for the payment of corporate expenses, Deputy v. du Pont, supra; Hewett v. Commissioner, 47 T.C. 483 (1967), and petitioner accordingly would not be entitled to deduct NAFTA's expenses.

We assume arguendo that petitioner is asserting that the $17,000 expense was incurred in connection with OU rather than NAFTA. Nevertheless, petitioner provided only vague, uncorroborated testimony to substantiate the $17,000 expense at issue, and we do not find petitioner's testimony concerning this issue to be reliable. Furthermore, we note that petitioner's description of the expense at trial does not appear to be consistent with the description of the expense given on the Schedule C. We conclude that petitioner has failed to substantiate the disallowed deduction. See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. Respondent's disallowance of the deduction is sustained.

## 3. Accuracy-Related Penalty

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) with respect to the portion of the underpayment attributable to the omission of the

Schedule C gross receipts.  Respondent did not determine that petitioner is liable for the accuracy-related penalty with respect to any other adjustment in the notice of deficiency.

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, one of which is negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year.  Id.

It is clear that petitioner was negligent with respect to the omission of the Schedule C income.  Petitioner did not keep adequate books and records or otherwise substantiate the amount of income reported on his return, as required by the Internal Revenue

Code.  The evidence petitioner did provide that shows certain amounts of income that he received in the year in issue does not correspond to the total amount reflected on his return.  Nor does the amount of income reported on his return correspond to the Forms 1099-MISC which petitioner was issued.  Despite being involved in transactions resulting in bank deposits of over $325,000, petitioner testified that "I also am mindful of the fact that there's probably a valid criticism that could be made of me because I do not keep records that are precise, that can be added up and totaled."  We sustain respondent's determination with respect to the section 6662(a) accuracy-related penalty, as modified by respondent's concession concerning the amount of unreported income.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.