T.C. Summary Opinion 2004-156


UNITED STATES TAX COURT


HOORA RAHIMI AND ISAAC WILLIAM HAMMOND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9218-03S.          Filed November 10, 2004.


Hoora Rahimi and Isaac William Hammond, pro sese.

<u>Jack T. Anagnostis</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined for 1999 a deficiency in petitioners' Federal income tax of $16,420 and an accuracy-related penalty under section 6662(a) of $3,167.

In the petition, petitioners did not challenge respondent's adjustments to their Schedule A, Itemized Deductions, totaling $43,204. Pursuant to Rule 34(b)(4), Schedule A deductions in excess of those stipulated by the parties are deemed conceded by petitioners.

The issues remaining for decision are whether petitioners are: (1) Entitled to deductions on Schedule C, Profit or Loss From Business; (2) entitled to offset a rental real estate loss against wage income; and (3) liable for an accuracy-related penalty under section 6662(a).

The stipulated facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioners resided in Chadds Ford, Pennsylvania.

## Background

### A. Petitioner's Employment During 1999

#### 1. Eli Lilly & Co.

Dr. Isaac William Hammond (petitioner) worked full time throughout 1999 for Eli Lilly & Co. (Eli Lilly) conducting pharmaceutical research. He received $149,615.82 as employee wages from Eli Lilly in 1999.

2.  <u>Indiana University</u>

In addition to his full-time employment, petitioner taught a graduate-level class at Indiana University (the university) two afternoons per week from January through May 1999.

The university paid petitioner employee wages of $5,000 for teaching for that period.  Petitioner was given an office in which to meet students and to perform administrative duties as well as office equipment and supplies to prepare course materials.  Petitioner spent an additional 3 to 4 hours at home each of the other week nights preparing for class and grading student assignments.

Petitioner estimates that he traveled 60 miles from Eli Lilly to the university to teach each class.  Following class, petitioner traveled about 90 miles from the university to his home.  On Form 2106, Employee Business Expenses, petitioner did not claim a deduction for vehicle expenses.

On nights when he taught, petitioner bought dinner.  On Form 2106, petitioner claimed a deduction of $1,500 for meals.

3.  <u>Illinois/Indiana Emergency Medical</u>

On weekends throughout 1999, petitioner treated patients and reviewed patient charts for Illinois/Indiana Emergency Medical (IIEM) at various locations.  Most often, however, he performed these services at Howard Community Hospital in Greensburg, Indiana.

Petitioner received employee wages of $6,272.50 from IIEM for his services.  Petitioner traveled 120 miles round trip from his residence when he treated patients at Howard Community Hospital.  He bought his meals when he worked there.

4.  American Research Associates, Inc.

As a result of his work at IIEM, petitioner became interested in conducting medical research into the treatment of hypertension.  He incorporated American Research Associates, Inc. (ARA), as a nonprofit medical research corporation in Indiana on June 15, 1999.

To obtain funding for this medical research, petitioner prepared and submitted several grant proposals to the National Institutes of Health (NIH) in 1999.  He did not, however, receive any grants from NIH during 1999.

B.  Petitioners' 1999 Federal Individual Income Tax Return

On April 17, 2000, petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 1999.  Among the forms attached to the return were Schedule A; two Schedules C; Schedule E, Supplemental Income and Loss; Form 2106; and Form 8829, Expenses for Business Use of Your Home.

1.  Petitioners' Schedules C

a.  ARA

The first Schedule C petitioners attached to their 1999 Form 1040 was for ARA, which petitioners characterized as a medical

research business. Petitioners included the IIEM wages of $6,272.50 in the $6,610 reported as gross income on the ARA Schedule C.

Petitioners deducted various business expenses totaling $38,557. They claimed car expenses of $26,075 based on the number of miles petitioner traveled in 1999 using the same car for commuting from his residence to Eli Lilly and traveling to IIEM and to the university. According to the service book for petitioner's car, petitioner traveled a total of 25,657 miles. On Form 4562, Depreciation and Amortization, petitioners claimed that he used the car 100 percent for business and that he traveled 60,000 miles in 1999.

Petitioners deducted $2,100 for insurance premiums petitioner says he paid for the car he used for travel in 1999. Petitioner did not provide any records to substantiate these expenditures.

Petitioners deducted $450 for fees petitioner says he paid to an attorney to review his employment contract with IIEM. He does not have a bill from the attorney nor any record of the payment.

Petitioners deducted $2,800 for office expenses on the 1999 Schedule C for ARA. Petitioner cannot recall how he calculated the amount of $2,800 and did not present any records to substantiate that amount.

Petitioners deducted $500 for printer and copier supplies, repairs, and maintenance. Petitioner does not have any receipts to substantiate that amount.

Petitioners deducted $1,500 for taxes and licenses, which respondent disallowed. Respondent allowed petitioner's payments for licenses as a miscellaneous itemized deduction on Schedule A.

Petitioners deducted $3,567 on Schedule C for travel in 1999 as part of job-hunting expenses. Respondent allowed as a miscellaneous itemized deduction on Schedule A the $3,355 that petitioner substantiated.

Petitioners also deducted $1,500 in meal expenses and $5,395 for the business use of their home which respondent disallowed.

Petitioners' claimed deductions exceeded the wages from IIEM that were reported as gross income on the ARA Schedule C, resulting in a reported loss of $37,342. Petitioners applied the reported loss against the $149,615.82 of wage income petitioner received from Eli Lilly for 1999. Respondent disallowed all the deductions petitioners claimed on the ARA Schedule C.

b. ATE Consulting Services

The second Schedule C was for ATE Consulting Services (ATE), which petitioner characterized as a consulting business.

Petitioners reported the $5,000 of teaching wages petitioner received from the university as gross income on the ATE Schedule C.

2. Petitioners' Schedule E

During 1999, petitioners owned a house in Lithonia, Georgia. Petitioner received approval from DeKalb County, Georgia, to participate in its public assistance program. Petitioner received rents of $11,405 for his tenants from DeKalb County under that program. On their Schedule E for 1999, petitioners reported a rental real estate loss of $2,635 from the rental of the house.

Petitioners offset the rental real estate loss against the wage income earned from Eli Lilly. Respondent disallowed petitioners' rental real estate loss.

C. Accuracy-Related Penalty

Respondent also determined that petitioners are liable for an accuracy-related penalty under section 6662(a).

## Discussion

Under section 7491(a)(1), the burden of proof may shift to the Commissioner. Because petitioners failed to meet the requirements of section 7491(a)(2), the burden of proof does not shift to respondent in this case. As to the accuracy-related penalty, respondent has the burden of production; the burden of persuasion remains with petitioners. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise. Welch v.

Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deduction claimed.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra at 115.  This includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A.   Petitioners' Schedule C Expenses

It is well settled that a corporation is an entity distinct from its shareholders.  Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943); Dalton v. Bowers, 287 U.S. 404, 410 (1932).  Furthermore, the business of a corporation is separate and distinct from the business of its shareholders.  Moline Props., Inc. v. Commissioner, supra; Deputy v. DuPont, 308 U.S. 488, 494 (1940); Crook v. Commissioner, 80 T.C. 27, 33 (1983), affd. without published opinion 747 F.2d 1463 (5th Cir. 1984).  Consequently, a shareholder is not entitled to a deduction for the payment of corporate expenses.  Deputy v. DuPont, supra at 494; Hewett v. Commissioner, 47 T.C. 483 (1967).  Petitioner incorporated ARA in Indiana in June 1999 and accordingly would not be entitled to deduct ARA's expenses.

To the extent that the claimed deductions related to petitioner's employment at the university and IIEM, they were not substantiated, as petitioners failed to substantiate any of the

expenses claimed on the ARA Schedule C.  See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  The Court sustains respondent's disallowance of the ARA Schedule C deductions.

B.  Schedule E Rental Real Estate Losses

Petitioners reported a rental real estate loss of $2,635 from the rental of their property in Georgia.  They applied the loss against petitioner's wages from Eli Lilly.  Respondent disallowed the loss.

Section 469 generally prevents a taxpayer from deducting passive activity losses from income unrelated to a passive activity, requiring that passive losses be used only to offset passive income.  Sec. 469; Schwalbach v. Commissioner, 111 T.C. 215, 223 (1998).  A taxpayer's right to make use of passive activity losses in any year is limited to the amount of the taxpayer's passive activity income for that year.  Sec. 469(a), (d)(1).  Amounts disallowed may be carried forward to subsequent years.  Sec. 469(b).  Subject to exceptions not relevant here, a passive activity loss includes all losses from passive activities, and a rental activity is defined by section 469(c)(2) to be a "passive activity".

Although petitioners are not entitled to offset the rental real estate loss against petitioner's wages, section 469(i) allows a taxpayer to claim up to $25,000 per year in passive activity losses from rental real estate activities in which the

taxpayer actively participated, subject to a phaseout once the taxpayer's adjusted gross income exceeds $100,000. The $25,000 exemption is phased out by 50 percent of the amount by which the adjusted gross income of the taxpayer for the taxable year exceeds $100,000. Sec. 469(i)(3). For this purpose, the taxpayer's adjusted gross income is determined without regard to any passive activity loss. Sec. 469(i)(3)(F)(iv). Respondent concedes that petitioner actively participated in the rental real estate activity.

On their 1999 tax return, petitioners reported $149,616 in wages, $53 in taxable interest, $3,521 in taxable refunds or credits, $6,272.50 in wages from IIEM, and $5,000 in wages from the university for an adjusted gross income (without the passive activity loss) of $164,462.50. Petitioners' adjusted gross income exceeds $100,000 by $64,462.50. Fifty percent of $64,462.50 is $32,231.25. When petitioners' maximum offset amount of $25,000 is reduced by $32,231.25, it is completely eliminated. Thus, the Court sustains respondent's determination disallowing petitioners' rental real estate loss.

C. Accuracy-Related Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty under section 6662(a). Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, including negligence

or disregard of rules or regulations and a substantial understatement of income tax. See sec. 6662(b)(1) and (2). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of tax of $5,000 or more. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

Petitioner failed to keep adequate books and records reflecting expenses of his ARA activities and to properly substantiate other items reported on the return. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. There is an understatement of tax greater than $5,000. The Court concludes

that respondent has produced sufficient evidence to show that the section 6662 accuracy-related penalty is appropriate.  Nothing in the record indicates petitioners acted with reasonable cause and in good faith.  The Court holds that the record supports respondent's determination that petitioners are liable for the accuracy-related penalty.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.